# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **INFINIUM BUILDERS LLC and KE HOLDINGS LLC d/b/a ASCENT CONSTRUCTION, On Behalf of Themselves and All Others Similarly Situated,** | ) ) ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-00924** |
| | ) | **Judge Aleta A. Trauger** |
| **METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY,** | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM and ORDER</u>

Before the court is the Motion to Disqualify filed by defendant Metropolitan Government of Nashville & Davidson County ("Metro"), seeking to disqualify any attorney affiliated with the law firm Thompson Burton PLLC ("Thompson Burton") from serving as counsel of record for the plaintiffs in this case, under Tennessee Rule of Professional Conduct 1.11. (Doc. No. 24.) It argues, in a nutshell, that four Thompson Burton attorneys previously worked for Metro on what is effectively the same matter as that at issue in this case and that their resulting conflict of interest should be imputed to the entire firm.

Metro has filed a Memorandum in support of the Motion to Disqualify (Doc. No. 27), along with several declarations and an email thread showing its discussion with plaintiffs' counsel about this issue. Through separate counsel, Thompson Burton and attorney Alex Dickerson (referred to collectively herein as "Thompson Burton") filed a Response in Opposition to the Motion to Disqualify (Doc. No. 35) and their own supporting declarations. The plaintiffs, through other

counsel of record, filed a Response simply adopting Thompson Burton's Response (Doc. No. 38), and Metro has filed a Reply (Doc. No. 47.)

For the reasons set forth herein, the Motion to Disqualify will be denied.

## I.     LEGAL STANDARDS

### A.     Federal Law Governs the Dispute

A motion to disqualify is the proper way for a litigant to bring an alleged conflict of interest to a court's attention. *Seaman Corp. v. Zurich Am. Ins. Co.*, 643 F. Supp. 3d 790, 794–95 (N.D. Ohio 2022). The "moving party bears the burden of establishing the need for disqualification." *Id.* at 795 (quoting *Gordon v. Dadante*, No. 1:05-CV-2726, 2009 WL 2732827, at *5 (N.D. Ohio Aug. 26, 2009)). Courts have broad—though not unfettered—discretion when ruling on motions to disqualify. *Id.*

While the Sixth Circuit's guidance on what standards to apply has been somewhat ambiguous, it is clear that, while "[e]thical rules involving attorneys practicing in the federal courts are ultimately questions of federal law," federal courts may "look to the state rules of professional conduct for guidance." *In re: Glenview Health Care Facility, Inc.*, 620 B.R. 582, 589 (B.A.P. 6th Cir. 2020) (citation omitted); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc.*, 466 F.3d 456, 457–58 (6th Cir. 2006) (applying Michigan Rules of Professional Conduct), *vacated in part on other grounds*, 472 F.3d 436 (6th Cir. 2007); *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 1274555, at *2 (N.D. Ohio Mar. 20, 2019) (citations omitted). *See also* 6th Cir. R. 46(b) ("An attorney admitted to practice in this court is subject to the rules of professional conduct or other equivalent rules of the state where the attorney's principal office is located."). This court's Local Rules likewise provide that attorneys practicing in this court are subject to the Tennessee Rules of Professional Conduct. *See* M.D. Tenn. L.R. 83.01(c)(6) ("The

standard of professional conduct of the members of the bar of this Court shall include the current Tennessee Rules of Professional Conduct.").

A violation of the applicable ethical rules of professional conduct "does not automatically necessitate disqualification of an attorney." *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865 (S.D. Ohio 2002). Rather, the "extreme sanction of disqualification should only be utilized when there is a reasonable possibility that some specifically identifiable impropriety actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *Id.* (internal quotation marks and citation omitted). While motions to disqualify may be legitimate and necessary under certain circumstances, they "should be viewed with extreme caution for they can be misused as techniques of harassment." *Id.* at 865–66.

### B.    TRPC 1.11 Provides Guidance

The court finds it appropriate in this case to look to Rule 1.11 of the Tennessee Rules of Professional Conduct ("TRCP") for guidance, both because the parties appear to agree that it applies and because it specifically governs "Special Conflicts of Interest for Former or Current Government Officers and Employees." The rule requiring disqualification states, as relevant here:

> Except as law may otherwise expressly permit, a lawyer who has formerly served as a public officer or employee of the government . . . shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.

TRCP 1.11(a). In other words, to establish that disqualification of an attorney is warranted under this rule, the movant must show that the attorney now works as a private attorney on the same "matter" on which he previously participated "personally and substantially" while employed by the government, unless the former government employer approves the new representation in writing.

If an individual lawyer is disqualified under TRCP 1.11(a) from working on a particular matter, then his or her conflict of interest as to that matter will be imputed to the entire law firm,

> unless both the personally disqualified lawyer and the lawyers who are representing the client in the matter act reasonably to:
>
> > (1) ascertain that the personally disqualified lawyer is prohibited from participating in the representation of the current client; and
> >
> > (2) determine that no lawyer representing the client has acquired any material confidential government information relating to the matter; and
> >
> > (3) promptly implement screening procedures to effectively prevent the flow of information about the matter between the personally disqualified lawyer and other lawyers in the firm; and
> >
> > (4) advise the government agency in writing of the circumstances that warranted the utilization of the screening procedures required by this Rule and the actions that have been taken to comply with this Rule.

TRCP 1.11(b).

> The Rule defines the term "matter" to include

> > any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter involving a specific party or parties . . . .

TRCP 1.11(e)(1).

The Comments to Rule 1.11 recognize that the Rule "represents a balancing of interests" between, on the one hand, the risk of unfair advantage to a private client "by reason of access to confidential government information" and, on the other, the government's "legitimate need to attract qualified lawyers as well as to maintain high ethical standards." TRPC 1.11 cmt. [4]. For this reason, a former government lawyer is "disqualified only from particular matters in which the lawyer participated personally and substantially." *Id.* For the same reason, the disqualification required by Rule 1.11(a) is specifically limited to disqualification from "matters involving a *specific party or parties*, rather than extending disqualification to *all substantive issues* on which

the lawyer worked." *Id.* (emphasis added). The comments recognize that a particular "'matter' may continue in another form" and that, "[i]n determining whether two particular matters are the same, the lawyer should consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed." *Id.* cmt. [10].

Although the Tennessee courts have apparently not been called upon to further refine the definition of "matter," other courts have concluded that a matter is a "discrete, identifiable transaction or conduct involving a particular situation and specific parties." *Sec. Inv. Prot. Corp. v. Vigman*, 587 F. Supp. 1358, 1363 (C.D. Cal. 1984) (quoting ABA Formal Opinion No. 342 (1975)); *accord Great Divide Wind Farm 2 LLC v. Aguilar*, 426 F. Supp. 3d 949, 975 (D.N.M. 2019) (quoting *Vigman*); *Archuleta v. Turley*, 904 F. Supp. 2d 1185, 1190 (D. Utah 2012) (same).

## II.    BACKGROUND

Plaintiffs Infinium Builders LLC and KE Holdings LLC d/b/a Ascent Construction filed their Class Action Complaint ("Complaint") initiating this action on August 30, 2023. (Doc. No. 1.) Counsel of record, as reflected on the face of the Complaint, includes three lawyers from the law firm of Barrett Johnston Martin & Garrison, PLLC (whose representation is not implicated by the present Motion to Disqualify), as well as Alex Dickerson and one other attorney affiliated with Thompson Burton. (*See* Compl. at 13.) The Complaint asserts two causes of action on behalf of the plaintiffs and a proposed Rule 23 Class: (1) a claim under 42 U.S.C. § 1983 based on "takings" of property in violation of the Fifth Amendment; and (2) a state law unjust enrichment claim.

Both claims arise from Metro's enactment, in September 2019, of BL2019-1659 (the "Sidewalk Ordinance"), an ordinance requiring, in certain conditions, that any applicant for a building permit either build a sidewalk on the property for which the building permit is sought, contribute to a "fund for the pedestrian benefit zone" ("Fund"), or obtain a waiver from Metro's Zoning Administrator in order to receive the building permit. (Complaint ¶¶ 9–19.)

In October 2020, two owners of properties within Metro subject to the Sidewalk Ordinance sued Metro in this court, asserting that the Sidewalk Ordinance constituted an unconstitutional taking and seeking declaratory and injunctive relief. (Complaint ¶ 24 (citing *Knight v. Metro. Gov't*, No. 3:20-cv-00922 (M.D. Tenn. Oct. 27, 2020) (Doc. No. 1)).) Although this court initially upheld the Sidewalk Ordinance as constitutional, the Sixth Circuit reversed, holding that the Sidewalk Ordinance as applied to the *Knight* plaintiffs constituted an unconstitutional taking. *Knight v. Metro. Gov't*, 67 F.4th 916 (6th Cir. 2023). The Sixth Circuit remanded the case to this court for a determination of the appropriate remedy. The parties ultimately resolved the matter without further court intervention, and the court entered an agreed order of dismissal in September 2023. *Knight v. Metro. Gov't*, No. 3:20-cv-00922 (M.D. Tenn. Sept. 22, 2023) (Doc. No. 56).

The plaintiffs in the present case allege that they, like the plaintiffs in *Knight*, own properties within Metro that are subject to the Sidewalk Ordinance and that they built sidewalks and/or paid various sums into the Fund in lieu of building sidewalks in order to receive building permits to build new single and two-family homes on properties owned by them between 2022 and 2023. (Complaint ¶¶ 33–53.) In light of the Sixth Circuit's ruling that the Sidewalk Ordinance is unconstitutional, they bring suit on behalf of themselves and similarly situated members of a proposed Rule 23 Class, defined as "[a]ll individuals and entities who complied with the Sidewalk Ordinance by either building a sidewalk or paying a fee in lieu of a sidewalk," to recover all fees paid into the Fund and the incurred costs of building sidewalks, plus interest and attorney's fees. (Doc. No. 1, at 12–13.)

Metro now seeks to disqualify all Thompson Burton attorneys from representing the plaintiffs in this action. It argues that, under TRPC 1.11, this case and other litigation against Metro challenging the Sidewalk Ordinance, including *Knight* as well as another case brought in state

court, *MRB Developers v. Metro. Gov't*, No. 19-534-I (Davidson Cty. Chancery Court, 20th Jud. Dist.), constitute effectively the same "matter," which Metro refers to as the "Sidewalk Ordinance Matter," and that Dickerson himself and three other current lawyers in Thompson Burton's Land Use & Development Practice Area (Bill Herbert, Emily Lamb, and Jonathan Michael) were formerly employed as attorneys for Metro in its Codes Department and all personally and substantially participated in the Sidewalk Ordinance Matter before moving from Metro to Thompson Burton.[1] Metro specifically contends that *all* "enforcement and litigation of the Prior Sidewalk Ordinance and the Sidewalk Ordinance are the same 'matter' under" TRPC 1.11. (Doc. No. 27 at 5.)

In support of this broad application of the term "matter," Metro asserts:

> This lawsuit challenges the Sidewalk Ordinance's constitutionality, analyzing the same basic facts regarding its enactment and enforcement as *Knight* did, and just as *MRB Developers* challenged the Prior Sidewalk Ordinance. The Complaint here contains allegations regarding the Zoning Administrator and BZA's roles in the Sidewalk Ordinance and is littered with references to the Knight litigation. *Knight*, *MRB Developers*, and this case all challenge sidewalk regulation on similar legal theories. The plaintiffs are also related—all property owners to whom the Sidewalk Ordinance or Prior Sidewalk Ordinance were applied. This lawsuit was filed before *MRB Developers* and *Knight* had even been fully resolved on remand. Accordingly, they are all the same "matter" under [TRPC] 1.11(e).

(Doc. No. 27, at 6–7 (internal citations to the record omitted).)

From there, Metro's argument focuses on other aspects of the TRPC 1.11. First, it argues that, because Dickerson himself was personally and substantially involved in the "Sidewalk Ordinance Matter" before going to work at Thompson Burton, he is personally disqualified from representing the plaintiffs in this case, and his disqualification is automatically imputed to the firm

---

[1] Dickerson apparently left Metro and joined Thompson Burton in January 2023. (*See* Doc. No. 25, Fox Decl. ¶ 4.) The record does not reveal when the other three attorneys left Metro to move to Thompson Burton, but it seems to have been before Dickerson's departure. (*See id.* ¶ 8.)

as a whole, under TRCP 1.11(b), because it is clear that he was never shielded from participating in the representation of the plaintiffs in this case. Second, Metro argues that, because of their own personal and substantial involvement in the "Sidewalk Ordinance Matter," Herbert, Lamb, and Michael are personally disqualified from representing the plaintiffs in this litigation and, moreover, that their conflicts of interest are imputed to the entire firm, because Thompson Burton failed either to promptly implement reasonable screening procedures or to notify Metro of these procedures, as required by TRPC 1.11(b). As a result, Metro contends that, even if Dickerson himself were not personally disqualified, the other three attorneys' conflicts combined with the law firm's failure to comply with TRPC 1.11's screening and notice measures means that the law firm as a whole must be disqualified.

In its Response, Thompson Burton pays admittedly scant attention to the question of how "matter" should be defined for purposes of TRPC 1.11(a). Instead, it instead focuses its efforts on arguing that Metro has failed to show that Dickerson himself was "personally *and substantially* involved in anything to do with *this matter*" while he was a Metro attorney and that, even assuming Herbert, Lamb, and Michael have conflicts of interest, Thompson Burton applied appropriate screening measures and, alternatively, that any "technical deficiency with respect to prior notice requirements under [TRPC] 1.11(b) should not form a basis for the harsh remedy of disqualification." (Doc. No. 35, at 7 (emphasis in original).) At the same time, however, Thompson Burton expressly contends that "Metro's argument that anything related to the Sidewalk Ordinance is all one matter for purposes of application of the ethics rules is untenable." (*Id.*) It asserts that, while the "current and former representations involve the same *general* subject matter, land-use and zoning, that does not equate to involving the same 'matter'" under TRCP 1.11. (*Id.* at 10 (emphasis added).) Thompson Burton further contends that "the prior work of a government

lawyer on a case of the same type, but involving different parties, does not make matters the same" and that the term "matter" does not include "general legislative, policy-making, rule-making, or regulatory activity by a government agency." (*Id.* (citing Restatement (3d) of the Law Governing Lawyers § 133 cmt. e (Am. L. Inst. 2000), and quoting Douglas R. Richmond, *As the Revolving Door Turns: Government Lawyers Entering or Returning to Private Practice and Conflicts of Interest*, 65 St. Louis U. L.J. 325, 334 (2021)).)

Metro has filed a Reply in which it insists that Thompson Burton "effectively concede[s]" that Herbert, Lamb, and Michael are disqualified from representing the plaintiffs in this case, "given their personal and substantial participation in the Sidewalk Ordinance matter while at Metro Codes" (Doc. No. 47, at 1), and that, because they have not shown compliance with TRPC 1.11(b), their conflicts are imputed to the entire firm. It also continues to argue that Dickerson was also personally and substantially involved in the "Sidewalk Ordinance Matter." (*Id.* at 4.)

## III. DISCUSSION

Because it is undisputed that Dickerson was employed as Senior Counsel for Land Use in Metro's Department of Law and that Herbert, Lamb, and Michael, were formerly employed as attorneys within Metro's Codes Department before becoming employed by Thompson Burton, the threshold inquiries for purposes of the disqualification analysis are (1) what exactly is the "matter" at issue in this case, and (2) is it the same "matter" with which any of the four Thompson Burton attorneys was involved while still employed by Metro. Regarding these questions, the court finds, first, that Thompson Burton has not conceded that any of the four former Metro attorneys is conflicted as a result of having worked on the same "matter" before moving into private practice, Metro's insistence to the contrary notwithstanding. As set forth above, Thompson Burton devotes an entire section of its Response—albeit a brief section—to the argument that Metro defines "matter" too broadly. Although its argument is focused on Dickerson's lack of "substantial

involvement" in whatever the "matter" might be, Thompson Burton does not accept Metro's definition of "matter." And second, as discussed below, Metro has not established that this case represents a continuation of the same "matter" that Dickerson, Herbert, Lamb, or Michael was involved with while employed by Metro.

Metro states that it (through the Metro Council) first adopted an ordinance requiring property owners who built new single-family homes in urban areas within Metro to install sidewalks or pay a fee in lieu of sidewalk construction in 2017 (the "Prior Sidewalk Ordinance"). That ordinance was amended in 2019 to the version of the "Sidewalk Ordinance" at issue in this litigation. As set forth above, Metro asserts that "enforcement and litigation of the Prior Sidewalk Ordinance and the Sidewalk Ordinance are the same 'matter'" under TRCP 1.11, essentially because the current and the prior ordinances both provide (or provided) for the ability to seek a waiver under certain circumstances and to seek a variance or appeal to the Board of Zoning Appeals ("BZA") after "first obtain[ing] a determination about the application of the Ordinance from the Zoning Administrator." (Doc. No. 27, at 5 (citing Sidewalk Ordinance and Prior Sidewalk Ordinance, in the record at Doc. Nos. 1-1 and 24-1, at 34).)

According to Metro, *Knight*, *MRB Developers*, and this lawsuit are all the same "matter," as all three "challenge[] the Sidewalk Ordinance's [or Prior Sidewalk Ordinance's] constitutionality,[2] analyzing the same basic facts regarding its enactment and enforcement," and relying on "similar legal theories." (Doc. No. 27, at 6–7.) Metro asserts that the Complaint in this case "contains allegations regarding the Zoning Administrator and BZA's roles in the Sidewalk

---

[2] Plaintiffs' counsel, in effect, conceded at oral argument that, insofar as the Complaint characterizes the question of "whether the Sidewalk Ordinance violates the Takings Clause of the Fifth Amendment of the U.S. Constitution" as a "pivotal" question of law in this case (Doc. No. 1 ¶ 57, it is somewhat inartfully pleaded, because—as the Complaint also states—the Sixth Circuit already definitively held, in *Knight*, that the Sidewalk Ordinance is unconstitutional.

Ordinance and is littered with references to the *Knight* litigation"; that the "plaintiffs are also related—all property owners to whom the Sidewalk Ordinance or Prior Sidewalk Ordinance [was] applied"; and that the cases are temporally closely related, as this lawsuit was filed even before *Knight* or *MRB Developers* had been fully resolved following the *Knight* remand.[3] (*Id.* at 7.)

Rule 1.11, however, does not define "matter" this broadly. Rather, the term is limited to "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other *particular* matter *involving a specific party or parties*." TRPC 1.11(e)(1) (emphasis added). The comments indicate that, in deciding "whether two particular matters are the same," the relevant factors are "the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed." TRPC 1.11 cmt. [10]. Other cases considering how broadly the term "matter" should be construed—including cases cited by Metro—have not applied it as broadly as Metro asks the court to do here.

In *Securities Investor Protection Corp. v. Vigman*, 587 F. Supp. 1358, 1365 (C.D. Cal. 1984), for example, the court defined "matter" as a "discrete, identifiable transaction or conduct involving a particular situation and specific parties." And it found that the "matter" at issue in that case was the same as, or encompassed, the same matter on which the plaintiff's attorneys had previously worked while employed as attorneys for the SEC:

> [A] discrete series of transactions involving a specific situation and specific parties in the 1973 civil action is part and parcel of a subsequent, broader allegation of widespread securities fraud and racketeering in the case at bench. The essence of the complaint here is that, since 1967, Vigman, Diamond and others have engaged in a sophisticated conspiracy to manipulate the price of securities. Thus, the complaint includes among its allegations, the alleged manipulation of the price of

---

[3] *MRB Developers*, like *Knight*, apparently settled in September 2023. (See Doc. No. 24-2.)

DCS stock by, among others, Diamond and Vigman, which allegation was the precise subject of the 1973 civil action.

*Id.*

Similarly, in *State ex rel. Jefferson County Board of Zoning Appeals v. Wilkes*, 655 S.E.2d 178, 179 (W. Va. 2007), an attorney who had worked for the county Board of Zoning Appeals ("BZA") while it considered two different conditional use permit ("CUP") applications for a particular applicant, Thorn Hill, left the government and began working for a private law firm that represented the same applicant, Thorn Hill, before the BZA on the same CUP applications. The trial court held that disqualification was not required because the same "matter" was not at issue, "finding that each step or stage of the review of a conditional use permit application was a separate and not substantially related matter." *Id.* at 182. The West Virginia Supreme Court, applying that state's identical Rule 1.11, disagreed, holding that "neither common sense nor applicable legal authority support[s] the contention that each stage in the consideration of a conditional use permit application is a separate and discrete 'matter.'" *Id.* at 185. Instead, it was clear that the attorney, while working as the BZA's attorney "participated personally and substantially in connection with the two Thorn Hill permit applications in question. Therefore, the disqualifying language of Rule 1.11(a) facially and literally applies to [the attorney] . . . ." *Id.* at 184.

Metro attempts to equate that case with this one, but they are not similar. While the Thompson Burton attorneys may well have been personally and substantially involved in the *Knight* and *MRB Developers* litigation, the fact that the cases involve, at least tangentially, the same Sidewalk Ordinance does not mean that they amount to the same discrete transaction involving the same parties.[4] The "matter" at issue in this case is the claim for reimbursement of

---

[4] The other cases cited by Metro are either not on point or not persuasive. For instance, in *United States v. Brothers*, 856 F. Supp. 370 (M.D. Tenn. 1992) (Higgins, J.), the court was not called upon to apply Rule 1.11, as Tennessee had not yet adopted the Model Rules of Professional

costs associated with complying with the Sidewalk Ordinance—now that it has been determined to be unconstitutional—brought by specific named plaintiffs (who seek to represent a class of other similarly situated Metro property owners). It is not a mere continuation of the disputes in *Knight* and *MRB Developers*. In fact, the *Knight* and *MRB Developers* plaintiffs have completely resolved their disputes with Metro; they are not named parties in this case and would not fall within whatever definition of the proposed Rule 23 class might ultimately be adopted. The parties may be similarly situated in that they were subject to the Sidewalk Ordinance, but they are not the same, and their discrete disputes are not the same.

Moreover, the legal landscape for the present lawsuit is dramatically different from the setting of either of the earlier cases. Effectively the sole issue litigated in *Knight* was the constitutionality of the Sidewalk Ordinance. That fundamental question has now been definitively answered by the Sixth Circuit. Conversely, in the present case, the principal legal issues will be what statute of limitations applies to the claimants' claims, when did the claims accrue, how

---

Conduct. The decision to require counsel for one of the defendants to withdraw was based primarily the Code of Professional Responsibility, which required lawyers to avoid "even the appearance of professional impropriety" and prohibited a lawyer from "accept[ing] private employment in a matter in which he had substantial responsibility while he was a public employee." *Id.* at 374 (citing Canon 9 and Disciplinary Rule 9–101(B) of the ABA Model Code of Professional Responsibility).

In *Green v. City of New York*, No. 10 Civ. 8214, 2011 WL 2419864 (S.D.N.Y. 2011), the municipal defendants moved to disqualify the plaintiff's attorneys in a § 1983 action alleging that a female detainee had been illegally strip-searched in a municipal jail. The lawyers were former city attorneys who had defended the city in class-action litigation regarding the lawfulness of strip-searches of pretrial detainees. Noting that "[t]he scope of a matter is an intensely fact-specific inquiry," the court held, under a nearly identical version of Rule 1.11(a), that the "matters" at issue were the same because the scope of the former representation included advice on subjects highly relevant to the other, even though there was no identity of parties. *Id.* at *2. The holding is not persuasive, because the court essentially adopted the "substantially related matter" standard from Rule 1.9, rather than requiring an identity of transactions and parties. *Accord Poly Software Int'l, Inc. v. Su*, 880 F. Supp. 1487, 1492–92 (D. Utah 1994) (distinguishing between Rule 1.9's "substantially related matter" and Rule 1.11's "matter").

compensation should be calculated, and whether a Rule 23 class should be certified. While the time frame between the three cases is necessarily compact, that is largely a function of the one-year statute of limitations applicable to claims under 42 U.S.C. § 1983.

Insofar as Metro appears also to be arguing that the "drafting and enforcement of the Sidewalk Ordinance" should be considered the same "matter" as this litigation seeking reimbursement based on its unconstitutionality, the court is likewise not persuaded. Metro has not explained why any confidential information Dickerson (or the other lawyers) might possess regarding the drafting of the Sidewalk Ordinance or Metro's "strategy" for implementing or enforcing it would have any relevance in this case, which does not concern or implicate Metro's internal processes regarding the passage and implementation of any version of the Sidewalk Ordinance.[5] The Sixth Circuit has already declared the Sidewalk Ordinance unconstitutional. That holding is effectively the starting point for the present lawsuit.

Because Metro has not shown, and cannot show, that the "matter" of this case is the same "matter" as the drafting, development, implementation, and enforcement of the Sidewalk Ordinance or the same "matter" as other discrete litigation against Metro challenging the constitutionality of the Sidewalk Ordinance, Dickerson's, Herbert's, Lamb's, and Michael's purported participation in those events or the other litigation would not disqualify them from working on this case. *Accord Doe v. City of Memphis*, No. 2:13-CV-03002-JTF, 2015 WL 4019550, at *6 (W.D. Tenn. Apr. 8, 2015) (finding the city's "reliance on the 'general features' of [the plaintiff's attorney's] work with the City [to be] misplaced" under Rule 1.11); *see also Pennington v. Metro. Gov't*, No. 3:05-1075, 2006 WL 8445756, at *3 (M.D. Tenn. May 2, 2006)

---

[5] It does not appear that Dickerson or any of the other three attorneys was still at Metro when the settlements in *Knight* and *MRB Developers* were negotiated.

(denying motion to disqualify, noting that "in situations implicating RPC 1.11, the prior and current representations must involve the **same** 'matter'" and that the term "matter" is explicitly defined "to include particular proceedings and endeavors involving a specific party or parties" (emphasis in original), *aff'd*, 2006 WL 8445773 (M.D. Tenn. June 30, 2006).

Given Metro's inability to show that the same "matter" is at issue, for purposes of TRPC 1.11(a), it cannot establish that disqualification of any of the Thompson Burton attorneys is required. The court, therefore, does not reach the question of whether any of the attorney's involvement in the same "matter" while still at Metro was personal and substantial or whether Thompson Burton's screening efforts would have been adequate in light of its rather obvious failure to comply with Rule 1.11(b).

## IV. CONCLUSION AND ORDER

For the reasons set forth herein, the defendant's Motion to Disqualify (Doc. No. 24) is **DENIED**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge