# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **INFINIUM BUILDERS LLC and KE HOLDINGS LLC d/b/a ASCENT CONSTRUCTION, On Behalf of Themselves and All Others Similarly Situated,** | ) ) ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00924** |
| | ) | **Judge Aleta A. Trauger** |
| **METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY,** | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM and ORDER</u>

Before the court is the Emergency Application for Temporary Restraining Order and Motion for Preliminary Injunction (Doc. No. 31) filed by plaintiffs Infinium Builders LLC and KE Holdings LLC d/b/a Ascent Construction. The plaintiffs' motion is supported by a Memorandum of Law. (Doc. No. 32.) Defendant Metropolitan Government of Nashville & Davidson County ("Metro") filed a Response opposing the relief sought by the plaintiffs, and the plaintiffs filed a Reply. (Doc. Nos. 41, 46.) Both parties have also filed several Declarations and supporting exhibits, as referenced herein, and the court held a hearing on the motion on November 15, 2023, a transcript of which is now in the record. (Doc. No. 50.) Because the plaintiffs' request is not *ex parte* and the issue has been fully briefed and exhaustively argued, the court finds that the Application for Temporary Restraining Order is effectively moot, and the court construes the motion as one for a preliminary injunction only.

This Memorandum presumes familiarity with the pleadings, the parties' filings in support

of and in opposition to the pending motion, as well as with the general background and issues involved in this case.

## I.     Legal Standards

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). To issue a preliminary injunction, the court must consider: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction." *Id.*

In addition, Rule 23(d) of the Federal Rules of Civil Procedure grants federal courts "broad authority" to manage class-action litigation. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981); *Fox v. Saginaw Cty.*, 35 F.4th 1042, 1047 (6th Cir. 2022). Such authority "includes the power to restrict 'abus[ive]' communications directed at class members," but an order issued in the exercise of that power must be "carefully drawn" to "limit[] speech as little as possible" and "should be based on a clear record and specific findings" showing a "likelihood of serious abuses." *Fox*, 35 F.4th at 1047 (citing *Gulf Oil*, 452 U.S. at 101–02). Abusive communications that may warrant the court's intervention "include anything related to the litigation that 'pose[s] a serious threat to the fairness of the litigation process, the adequacy of representation, and the administration of justice generally,'" such as "sharing misleading information, misrepresenting the nature of the class action, or coercing prospective class members to opt out of a class." *Id.* (quoting *In re Sch. Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988), and citing 3 William B. Rubenstein, Newberg on Class Actions §§ 9.3, 9.10 (5th ed. Dec. 2021 update)).

## II.    Background

The plaintiffs filed a Class Action Complaint ("Complaint") initiating this action on August 30, 2023, asserting, as relevant here, a claim under 42 U.S.C. § 1983 to recover damages resulting from unconstitutional takings. The plaintiffs seek relief on their own behalf and on behalf of a proposed Rule 23 class. The § 1983 claim arises from Metro's enactment, in September 2019, of BL2019-1659 (the "Sidewalk Ordinance"), which requires, in certain conditions, that applicants for a building permit within Metro either build a sidewalk on the property for which the building permit is sought, contribute to a "fund for the pedestrian benefit zone" ("Fund"), or obtain a waiver from Metro's Zoning Administrator in order to receive the building permit. (Complaint ¶¶ 9–19.) In May 2023, the Sixth Circuit ruled in a different case that Metro's Sidewalk Ordinance violates the Fifth Amendment's Takings Clause. *Knight v. Metro. Gov't*, 67 F.4th 916 (6th Cir. 2023).

In light of *Knight* and before this lawsuit was filed, Metro began implementing a claim procedure ("Claim Process") that permits certain businesses and individuals who contributed to the Fund or actually built a sidewalk in order to receive building permits, in compliance with the Sidewalk Ordinance, to seek reimbursement of the fees or costs associated with such compliance.[1] (*See* Doc. No. 32, at 2.) Despite their contention that Metro's Claim Process is confusing and woefully inadequate,[2] the plaintiffs do not seek to enjoin Metro from continuing to make payments pursuant to its Claim Process. However, they object to Metro's more recently implemented

---

[1] Counsel for Metro made it clear at the hearing on November 15, 2023 that Metro does not concede liability and that it characterizes all payments on these claims as settlements.

[2] The plaintiffs characterize the Claim Process as confusing and misleading, as well as insufficient, insofar as it is set up to reimburse "some, but not all, payors at amounts below the make-whole amounts sought in this lawsuit." (Doc. No. 32, at 2.) They also assert that Metro imposes "legally baseless barriers to payment—namely a disputed statute of limitations and an exhaustion requirement that the U.S. Supreme Court has repudiated." (*Id.*) These issues, however, are not yet before the court.

requirement that any business or individual receiving payment in settlement of Sidewalk Ordinance-related claims sign a "General Release" (hereafter, "Release") that (1) contains a forum selection clause that requires any lawsuit relating to the Release be brought in the Circuit or Chancery Court of Davidson County, Tennessee, thus, according to the plaintiffs, depriving this court of jurisdiction over any dispute related to the Release; and (2) operates to release and waive any claims asserted on claimants' behalf in this lawsuit (as absent Class members). (*Id.* at 3.)[3] The plaintiffs argue that it is now clear that the Release is "intended to prevent recovery in this case," as Metro has gone so far as to "*identify[] [this case] by name*" in its communications with claimants relating to the release in connection with the Claim Process. (*Id.* (emphasis in original).) Specifically, as discussed in greater detail below, Metro has notified claimants who have received a Release that, if they sign the Release, they are "waiving [their] right to pursue legal relief concerning the application of the Sidewalk Ordinance to the properties identified in the release including through any class action lawsuit such as the one filed by Infinium Builders, LLC in the United States District Court for the Middle District of Tennessee, Case No. 3:23-cv-00924." (*See, e.g.*, Doc. No. 32-2, at 19 (Oct. 27, 2023 email from Metro to Jackson Builders).)

The plaintiffs further contend that, due to Metro's decision to require claimants to sign the Release before it will release funds under the Claim Process, what was merely an inadequate and confusing process has now become "coercive and actually interferes with this litigation." (Doc. No. 32, at 4.) They insist that "[n]o one should be forced to decide between a potentially greater recovery in this action and receiving the payments Metro agrees it owes and had made available without such a condition until the filing of this lawsuit." (*Id.*) The plaintiffs assert that Metro has

---

[3] The form Release is in the record at Doc. No. 32-2, at 16.

conceded that "it owes these payments,"[4] and they argue that Metro "should not be permitted to hold [the payments] hostage by requiring absent class members to release the claims in this lawsuit and strip this Court of jurisdiction." (*Id.*)

Accordingly, the plaintiffs filed the present Motion for Preliminary Injunction to request an order enjoining Metro from:

- Requiring releases in exchange for payments made to individuals and businesses through its process to provide reimbursement of costs related to the Sidewalk Ordinance;

- Disseminating such releases to those individuals and businesses;

- Enforcing such releases, to the extent that they have already been executed; and,

- Communicating with those individuals and businesses about such releases or in an effort to secure releases of their claims related to the Sidewalk Ordinance.

(Doc. No. 31, at 1–2; *see also* Doc. No. 31-1, Proposed Temporary Restraining Order.) The plaintiffs insist that Metro's requiring claimants to sign the Release is coercive and intentionally designed to interfere with this litigation. They argue that this court should exercise its broad case management authority over this class action to invalidate any Releases that have already been signed and enjoin further interference with this litigation.. They also assert that they have made the showing required for issuance of a preliminary injunction, including likelihood of success on the merits; the risk of irreparable harm to the plaintiffs, as movants, if injunctive relief is not granted; the minimal risk of harm to others if injunctive relief is granted; and the public interest served by the granting of an injunction.

Metro opposes the motion on the basis that the releases are neither misleading nor coercive and that the plaintiffs have not established their entitlement to a preliminary injunction under the

---

[4] Again, Metro disputes this contention.

governing standards.

### III.    Partial Resolution of the Plaintiffs' Concerns at the Hearing

Other courts have found that "[a] defendant's failure to mention even an uncertified class action in securing settlements or releases from putative class members may be 'misleading.'" *Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758, 762 (N.D. Ohio 2010) (collecting cases). Although the plaintiffs' motion attempts to characterize Metro's providing notice of this lawsuit by name as somehow coercive or manipulative, it is clear that a failure to provide such notice would be much more damaging and problematic. Pressed to state what language in the Release would satisfy the plaintiffs' objections, counsel for the plaintiffs stated that the Release should "have a provision that makes clear that . . . by entering into this agreement you're not waiving claims in [this class action] litigation." (Doc. No. 50, at 36–37.)[5] That position is clearly unreasonable, and counsel appeared to back away from it at the hearing, conceding, upon the court's pressing, that if claimants are expressly notified what costs they are entitled to have reimbursed through Metro's Claim Process and exactly what rights and relief they might be giving up by signing the Release if they waive their right to participate in the class action, the plaintiffs would not have a basis for objecting to the Release, going forward. (*See id.* at 39 ("I think if [claimants are] fully informed at the beginning of a claims process . . . , then I don't know that we would have an objection to that.").) He continued to maintain that the Release should omit the forum selection clause or include this court as an alternative forum and that the Sidewalk Claim form itself (available at www.nashville.gov/departments/law/webform/sidewalk-claim), used by claimants to initiate the Claim Process, should be modified to identify with greater specificity what costs associated with

---

[5] The court initially misunderstood counsel to be stating that he would not object if the Release itself notified claimants that they *are* waiving their right to participate in this class action by signing the Release and did not press him on this statement.

compliance with the Sidewalk Ordinance could be reimbursed through Metro's Claim Process.

For its part, Metro agreed, through counsel, to promptly amend the Sidewalk Claim form to more specifically identify the costs and ancillary expenses claimants are entitled to include in their requests for reimbursement and to provide more information going forward to any claimant signing the Release about this class action and the rights the claimants will be giving up by settling their Sidewalk Ordinance-related claims directly with Metro. Metro did not agree either to remove the forum selection clause or to add this court as an alternative forum, pointing out that the provision is intended to prevent out-of-state developers from bringing suit in their home states and, moreover, that jurisdictional issues would likely preclude direct litigation concerning the Release in this court and that, in any event, insofar as the dispute falls within the context of this case, the court's management authority under Rule 23 would extend to such disputes.

Following the hearing on the preliminary injunction motion, the parties filed a Joint Notice of Agreed Revisions. (Doc. No. 52.) The Notice states that, in accordance with the parties' agreement at the hearing, Metro will amend the Sidewalk Claim form by

> creat[ing] a new field below the field titled "How did you comply with the sidewalk ordinance?" The new field will read as follows:
>
> > a. What was the amount, if any, of your ancillary costs to comply with the sidewalk ordinance (for example, survey costs)?
> >
> > b. [Attach documentation supporting ancillary costs claim].

(*Id.* at 1.)[6]

---

[6] The Notice also states, in a footnote:

> Though not a subject of Plaintiffs' motion or the Court's order, following the hearing, Metro Nashville informed Plaintiffs that it intends to remove the following sentence from the introductory paragraphs to the claim form: "Claims will be considered for potential reimbursement where (1) the claimed costs were incurred on or after May 10, 2022, and (2) the claimant sought a variance from the Board of Zoning Appeals or paid under protest."

(Doc. No. 52, at 1 n.1.)

In addition, the parties have agreed that Metro's cover letter accompanying future proposed Releases will include a new sentence, to be inserted after the sentence notifying claimants that, by signing the Release, they are waiving the right to participate in this lawsuit, to read as follows:

> In that lawsuit, the plaintiffs seek compensatory, consequential, incidental, and all other available economic damages; restitution; and pre- and post-judgment interest to the fullest extent permitted under the law and in equity for those who built a sidewalk or paid in lieu of building a sidewalk to comply with the sidewalk ordinance.

(*Id.* at 2.)

## IV. Remaining Issues

In light of the parties' agreement as reflected in the Joint Notice, the court finds that the plaintiffs' request for prospective injunctive relief has largely been rendered moot, except insofar as it pertains to the retention of the forum selection clause in the Release. Regarding that clause, however, the court finds that it is not coercive, misleading, or otherwise inappropriate. Moreover, insofar as any potential class member who signs a Release nonetheless seeks to participate in this litigation, the issue of the effectiveness of the Release can be litigated in this court under Rule 23, despite the forum selection clause. *See, e.g.*, *In re Nortel Networks Corp. ERISA Litig.*, No. 3:03-MD-01537, 2009 WL 3294827, at *16 (M.D. Tenn. Sept. 2, 2009) (Nixon, J.) (noting that the validity of release agreements signed by class members would be litigated collectively in the context of the plaintiffs' Motion to Dismiss the defendant's Counterclaim). The court also finds that requiring Metro to notify potential claimants of this lawsuit at the outset of the Claim Process (on the Claim Form website itself) would be unnecessarily confusing, particularly in light of the fact that this case has not yet been certified as a class action.

The remaining question before the court is whether the plaintiffs are entitled to any relief related to Releases that have already been signed by potential class members. With regard to that issue, Metro represented at the hearing that an initial set of claimants who submitted Sidewalk

Claim forms online and whose claims Metro initially approved received the Release along with a cover letter explaining that "[r]esolution of [their] claim requires Metropolitan Council approval and a signed release of claims" and asking the claimants to "review the attached release" and, if they agreed to its terms, to sign, date, and return it in order to receive payment on the claims. (*See, e.g.*, Doc. No. 32-2, at 13 (Oct. 24, 2023 Letter to Jackson Builders).)

That initial cover letter did not reference this litigation. A few days later, however, Metro sent an email expressly for the purpose of notifying this first wave of claimants about this lawsuit, as follows:

> We recently notified you that your claims related to the application of Metro's Sidewalk Ordinance to your properties are eligible for reimbursement, including interest. Included in that notification was a general release form. We want to make sure you understand that by signing this release, you are waiving your right to pursue legal relief concerning the application of the Sidewalk Ordinance to the properties identified in the release including through any class action lawsuit such as the one filed by Infinium Builders, LLC in the United States District Court for the Middle District of Tennessee, Case No. 3:23-cv-00924.
>
> Our office is counsel of record for Metro Nashville in that lawsuit, and Plaintiffs' counsel are as follows:
>
> [names and addresses of plaintiffs' counsel omitted]
>
> Metro Nashville will continue to pursue prompt approval and payment of all valid claims through the Sidewalk Claims Process. If you desire to resolve your claim as outlined in the release, please confirm by signing and notarizing the release and sending it to will.ayers@nashville.gov. Upon receipt of the signed release, we will begin the process of submitting the claim to the Metropolitan Council for approval.

(Doc. No. 32-2, at 19 (Oct. 27, 2023 email to Jackson Builders).)

Other claimants who submitted Claim Forms later than October 27, 2023 that were initially approved received the Release along with a modified cover letter, introduced by Metro as an exhibit at the hearing, that expressly notified the claimants that signing the Release would waive their right to participate in this lawsuit, as follows:

> By signing this release you are waiving your right to pursue legal relief concerning

the application of the Sidewalk Ordinance to the properties identified in the release, including through any class action lawsuit such as the one filed by Infinium Builders, LLC in the United States District Court for the Middle District of Tennessee, Case No. 3:23-cv-00924.

(*See* Doc. No. 51-2.)

Metro represented that it is in possession of four signed Releases in connection with four verified claims that it is prepared to present to the Metro Council and its Budget and Finance Committee for approval next week. Regarding the four signatories, Metro represents that each of these claimants has been notified of this litigation and that, by signing the Release, they are waiving their right to participate in this lawsuit, and they nonetheless chose to proceed with signing the Release and to receive payment directly from Metro in settlement of their claims. (*See* Doc. No. 50, at 49; *see id.* at 57 ("All of those individuals sent an affirmative response after that second communication notifying them of this lawsuit.").)

Metro also stated that an additional 15 to 20 claimants have likewise submitted Claim Forms online, have had their claims preliminarily approved, and have been presented with Releases. These claimants have likewise been notified of the existence of this lawsuit and the fact that signing the Release will operate as a waiver of the claimants' right to participate in this lawsuit. Some, but apparently not all, of these claimants notified Metro after receipt of information about this lawsuit that they wanted to proceed with pursuing their claims through Metro's Claim Process. (*See id.* at 57.)

The plaintiffs contend that further communication about this class action is warranted with respect to all of the individuals who have signed the Releases, to more specifically notify them what compensation they are entitled to and what relief they may be giving up by signing the Release. However, in the context of the specific relief the plaintiffs seek here, to show a strong likelihood of success on the merits and a risk of irreparable harm in the *absence* of an injunction,

the plaintiffs have the burden of showing that the Release and/or Metro's communications with claimants about the Release are somehow coercive or so misleading as to interfere with the fair administration of justice.

The court finds, in short, that the plaintiffs have not met that burden. As an initial matter, Metro did not initiate the contacts; rather, the claimants who have signed a Release applied to Metro for payment. Metro cannot be charged with contacting claimants in an attempt to thwart their ability to participate in this class action. Moreover, as Metro points out, it began implementing the Claim Process several months before this lawsuit was filed, and Metro's standard policy is to seek a release for payment of disputed claims or claims in excess of a certain sum. Even if the court accepts as true the plaintiffs' suggestion that this lawsuit provided the impetus for Metro to implement the Release requirement, that sole fact would not render the Releases either coercive or misleading.

The language of the Release pertaining to the waiver of claims is clear and straightforward, and it is not hidden in a lengthy and confusing document. Rather, the Release states in plain language, in its first paragraph, that by signing the Release and accepting the payment identified therein, the claimant releases Metro from "any and all claims, demands, causes of action, whether known or unknown, relating in any way to the application of Metro. Code § 17.20.120, Metro's Sidewalk Ordinance, in its past, current, or substantially similar form," to the specific property identified in the Release. (*See* Doc. No. 32-2, at 16.) Paragraph 3 of the Release reiterates that the claimant accepts the payment on the claim that is the subject of the Release "as full and final settlement of all disputes between and among the parties . . . regarding the application of the Sidewalk Ordinance . . . to the property" described in paragraph 1. (*Id.*) Claimants are in a better position than anyone else to know the total sum of their expenditures associated with complying

with the Sidewalk Ordinance and how those expenditures stack up against the reimbursement Metro is offering, and they have been provided the opportunity to contact plaintiffs' counsel in this case to find out more about this lawsuit. The Releases, coupled with information about this lawsuit, are not misleading.

In addition, there is nothing inherently coercive about Metro's attempts to settle claims related to the Sidewalk Ordinance outside the context of this lawsuit, nor can these efforts be construed as interfering with an *existing* class. The case is in its early stages and has not yet been certified to proceed as a class action. While Metro could have, and will going forward, provide greater clarity to those signing Releases as to the existence of this lawsuit and the effect of waiving claims, the plaintiffs have not established that Metro's past communications with potential class members in connection with the settlement of Sidewalk Ordinance-related claims were abusive or coercive or pose a threat to the fair administration of this case, particularly given the relatively small number of claimants to whom Metro has, to date, provided Releases.

To summarize, the court finds that the plaintiffs' request for a preliminary injunction pertaining to Metro's communications going forward has largely been rendered moot by the parties' agreement to modify Metro's Claim Form and the information Metro provides to claimants about the waiver of the right to potentially participate in this lawsuit.[7] Insofar as the plaintiffs still object to the inclusion of the forum selection clause in the Release, the court finds that the clause is appropriate and neither misleading nor coercive. Regarding those Releases that have already been executed, the plaintiffs have failed to establish that Metro's past communications in connection with the Releases or the Releases themselves are coercive, manipulative, or misleading.

---

[7] The question of whether further modifications might be required if a class is ultimately certified in this case is not yet before the court, but the parties are encouraged to consider that eventuality and reach an agreement regarding such communications if a class is certified.

The plaintiffs, therefore, have not established a substantial likelihood of success on the merits. Nor have they shown that they would suffer irreparable harm in the absence of an injunction or that the public interest would be served by the issuance of an injunction. The relevant factors for the issuance of preliminary injunctive relief do not weigh in favor of setting aside or invalidating the Releases.

**V.    Conclusion and Order**

Accordingly, the plaintiffs' Emergency Application for Temporary Restraining Order and Motion for Preliminary Injunction (Doc. No. 31) is **DENIED**.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge