**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **INFINIUM BUILDERS LLC and KE HOLDINGS LLC d/b/a ASCENT CONSTRUCTION, On Behalf of Themselves and All Others Similarly Situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 3:23-cv-00924** **Judge Aleta A. Trauger** |
| **METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY,** | ) ) ) ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is the Motion for Partial Judgment on the Pleadings (Doc. No. 64), filed by defendant Metropolitan Government of Nashville & Davidson County ("Metro"). Plaintiffs Infinium Builders LLC and KE Holdings LLC d/b/a Ascent Construction (collectively referred to herein, in the singular, as "Infinium" unless necessary to distinguish between them) oppose the motion (Doc. No. 74), and Metro has filed a Reply (Doc. No. 78). For the reasons set forth herein, the motion will be granted in part and denied in part.

## I.    LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for resolving a motion for judgment on the pleadings under Rule 12(c) mirrors the standard for resolving a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014); *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 886 (M.D. Tenn. 2018)

(Crenshaw, C.J.). "The primary distinction between a motion to dismiss for failure to state a claim [under Rule 12(b)(6)] and a motion for judgment on the pleadings [under Rule 12(c)] is one of timing." *In re Brizinova*, 592 B.R. 442 (E.D. N.Y. 2018).

Thus, in reviewing a motion for judgment on the pleadings, the court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Hayward*, 759 F.3d at 608 (citations omitted). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, "'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Id.* (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

A court considering a Rule 12(c) motion may look only at the "pleadings," a term that incorporates both the complaint and the answer. Fed. R. Civ. P. 7(a). In addition "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). An attachment to an answer that is a "written instrument" is therefore part of the pleadings and can be considered on a Rule 12(c) motion for judgment on the pleadings, as long as the attachment is central to the plaintiff's claim and of undisputed authenticity. *Doe*, 334 F. Supp. 3d at 887.

## II.     FACTS AND PROCEDURAL HISTORY

The backdrop for this lawsuit is that Metro enacted an ordinance, BL2016-493, codified at Metro Code § 17.20.120 *et seq.* ("Sidewalk Ordinance" or "Ordinance") in 2017 (amended in

2019), pursuant to which applicants for building permits for the construction, development, or redevelopment of certain residential and non-residential property within specific areas of Nashville designated by the Ordinance were required to either (1) build or replace a sidewalk on the property; (2) contribute to a fund ("Fund") for the development of sidewalks and bike paths, in lieu of building a sidewalk on the property; or (3) pay a fee and submit an application for a sidewalk waiver to the Metropolitan Zoning Administrator. (*See* Am. Compl., Doc. No. 60 ¶¶ 9–21.) In addition, the Ordinance allegedly required applicants "to dedicate right-of-way and/or public pedestrian easements without compensation." (*Id.* ¶ 41.)

Infinium alleges that it and others similarly situated owned and developed properties within Metro and that, to obtain building permits to develop their properties, they either, in accordance with the Sidewalk Ordinance, built new sidewalks on these properties—thus incurring substantial costs—or paid substantial sums into the Fund. At least some of the money paid into the Fund has not been allocated, meaning, according to Infinium, that Metro "continues to exercise custody and control over, and has not reimbursed, some of the fees paid by Infinium into the Fund." (*Id.* ¶ 110.)

In November 2021, this court issued a decision in a case brought by different plaintiffs challenging the same Sidewalk Ordinance, holding that the deferential "balancing" test that the Supreme Court adopted to assess zoning restrictions in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), applied to the Sidewalk Ordinance and that, under that test, the Ordinance did not effect an unconstitutional taking. *See Knight v. Metro. Gov't of Nashville & Davidson Cty.*, 572 F. Supp. 3d 428 (M.D. Tenn. 2021), *rev'd and remanded*, 67 F.4th 816 (6th Cir. 2023). The Sixth Circuit held that, rather than the *Penn Central* test, the less deferential "unconstitutional conditions" test developed by the Supreme Court in *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994), applied

instead. *Knight v. Metro. Gov't of Nashville & Davidson Cty.*, 67 F.4th 816, 818 (6th Cir. 2023). Because Metro, in the appeal, had "waived any argument that it can satisfy this unconstitutional-conditions test," the Sixth Circuit was not called on to apply the test to the Sidewalk Ordinance and simply remanded the case to this court to determine the appropriate remedy. *Id.* at 836, 837. The parties thereafter settled, and the court was never required to determine the appropriate remedy.

At some point following the issuance of *Knight*, Metro created a website through which other entities and individuals who had complied with the Sidewalk Ordinance by building sidewalks or contributing to the Fund could seek reimbursement of their costs (the "Metro Sidewalk Claim Process"). On the Metro Sidewalk Claim Process website, Metro initially agreed to "consider[] for potential reimbursement" any claims "where (1) the claimed costs were incurred on or after May 10, 2022 [*i.e.*, within one year prior to the issuance of the *Knight* ruling on May 10, 2023], and (2) the claimant sought a variance from the Board of Zoning Appeals or paid under protest." (Doc. No. 41-2, at 1; *see also* Am. Compl. ¶ 54 (misquoting Metro Sidewalk Claim Process website application in effect as of November 2023); *id.* ¶ 55 (expressly incorporating by reference Doc. No. 41-2)[1].) On or around November 16, 2023, however, Metro removed the language from its website stating that it would consider reimbursement of claims for costs incurred on or after May 10, 2022 and determined that it would subject all reimbursement claims to a one-year statute of limitations. (Am. Compl. ¶¶ 60–62; *see id.* ¶ 52 (citing

---

[1] Doc. No. 41-2 was filed by Metro as an exhibit to its Response in Opposition to Infinium's Motion for Temporary Restraining Order. (Doc. No. 41.) Because the Amended Complaint expressly incorporates by reference this exhibit and purports to quote the claim form, the court finds that it may consider this document without converting this motion into one for summary judgment.

https://www.nashville.gov/departments/ law/webform/sidewalk-claim[2]).)

Infinium alleges that it and others similarly situated have been harmed by the Sidewalk Ordinance and by the Metro Sidewalk Claim Process, insofar as they allegedly have had claims denied because they did not object to the application of the Sidewalk Ordinance at the time they incurred costs associated with it, such as through a zoning appeal or payment under protest. In addition, plaintiff Ascent Construction and potentially other property owners allegedly relied on the limitations period originally posted on the Metro Sidewalk Claim Process website to their detriment when they "intended to assert claims" but did not do so "prior to Metro's unilateral" implementation of the one-year limitations period, such that now any claims for costs incurred "between May 10, 2022, and August 30, 2022" would be "denied by Metro as untimely." (*Id.* ¶ 64.)

Infinium filed this lawsuit on behalf of itself and others similarly situated on August 30, 2023. It filed the Amended Complaint (Doc. No. 60), now the operative pleading, on January 16, 2024, seeking "legal and equitable relief on behalf of [itself] and all others who suffered an unconstitutional taking as a result" of the Sidewalk Ordinance. Infinium seeks to bring this lawsuit on behalf of three Rule 23 classes, which it defines as follows:

> All individuals and entities who complied with the Sidewalk Ordinance by building a sidewalk, paying a fee in lieu of a sidewalk, and/or paying a waiver fee within one year prior to the *Knight* decision through the present (the "One-Year Damages Class");

> All individuals and entities who complied with the Sidewalk Ordinance by granting an easement to Metro within one year prior to the *Knight* decision through the

---

[2] The Sidewalk Claim Process website now states: "To file a claim with the Metropolitan Government arising from sidewalk construction or payment of an in-lieu fee under Section 17.20.120 of the Metro Code, please complete the form below. Your claim will be processed in the ordinary course, and someone from the Department of Law will contact you concerning your claim." https://www.nashville.gov/departments/law/webform/sidewalk-claim.

present (the "Easement Class"); and

All individuals and entities who complied with the Sidewalk Ordinance by paying a fee in lieu of a sidewalk at any time since the enactment of the Sidewalk Ordinance whose payments (or any portion thereof) have not been allocated (the "Continuing Violation Class").

(Am. Compl. ¶ 112 (punctuation modified).)

The Amended Complaint states two causes of action on behalf of Infinium and the putative Rule 23 classes: (1) a claim under 42 U.S.C. § 1983 based on allegations that the issuance of building permits conditioned on the plaintiffs' agreement to comply with the Ordinance by either building a sidewalk or paying into the Fund and granting an easement to Metro constitutes a taking without compensation in violation of the Fifth Amendment to the United States Constitution; and (2) a claim of "unjust enrichment" under state law.

In connection with Count One, under § 1983, Infinium seeks damages and restitution to cover, for example, the amount of the fees paid into the Fund, the cost of sidewalk construction, the waiver fee, the value of the easements granted, and so forth. (Am. Compl. ¶ 133.) It also seeks injunctive relief to permanently enjoin enforcement of the Sidewalk Ordinance and to "enjoin the enforcement of and order [Metro] to relinquish all easements secured pursuant to the Sidewalk Ordinance, enjoin the allocation of and order the return of all unallocated funds under the Sidewalk Ordinance, etc." (*Id.* ¶ 134.) For Count II, Infinium seeks "all appropriate monetary and non-monetary relief" to address Metro's unjust enrichment. (*Id.* ¶ 142.)

The Amended Complaint also expressly seeks "[a] finding that Defendant is equitably estopped from asserting that the statute of limitations has continued running as to the claims of Plaintiffs and the members of the Rule 23 classes as of the date of the *Knight* decision by the Sixth Circuit, *i.e.*, May 10, 2023." (*Id.* Pt. VII ¶ E, at 25.)

Metro filed an Answer to the Amended Complaint (Doc. No. 61), generally denying that the plaintiffs are entitled to relief and further asserting, among other affirmative defenses, that Infinium's and any putative class member's claims are "barred by the voluntary payment doctrine," barred because they did not seek a waiver from the Sidewalk Ordinance's requirements or appeal its application to the Metro Board of Zoning Appeals, barred for failure to exhaust administrative remedies, barred by the one-year statute of limitations applicable to claims under 42 U.S.C. § 1983, and barred by the doctrine of sovereign immunity. (Answer, Doc. No. 61 ¶¶ 2– 15.)

Metro now seeks judgment as a matter of law on (1) the unjust enrichment claim, on the basis that the claim is barred altogether by the doctrine of sovereign immunity; (2) on any § 1983 claim accruing more than one year before the lawsuit was filed, based on the governing one-year statute of limitations; (3) as to the plaintiff's claim that Metro is equitably estopped from enforcing a one-year statute of limitations; and (4) on all class claims. (*See generally* Mem. of Law, Doc. No. 65.)

## III. DISCUSSION

### A. Sovereign Immunity

To begin with the relatively easy question, the law is clear that Metro is entitled to sovereign immunity, under state law, from the unjust enrichment claim. As the Tennessee Court of Appeals has explained:

> The doctrine of sovereign immunity has been part of the common law of Tennessee for well over a century and provides that suit may not be brought against a governmental entity unless that governmental entity has consented to be sued. . . . The longstanding rule of sovereign immunity is embodied in the Tennessee Constitution, which provides, "Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const., Art. I, § 17. In addition, Tennessee Code Annotated section 20-13-102(a) provides, "No court in the state shall have any power, jurisdiction or authority to entertain any suit against the state . . . with a view to reach the state, its treasury, funds or property,

and all such suits shall be dismissed[.]" In the context of sovereign immunity, "[t]he State" includes the departments, commissions, boards, institutions and municipalities of the State.

Under both the common law doctrine and the constitutional provision, governmental entities may prescribe the terms and conditions under which they consent to be sued, . . . including when, in what forum, and in what manner suit may be brought. Our state constitution specifically empowers the legislature—not the judiciary—to waive the protections of sovereign immunity. The General Assembly undoubtedly has control over the manner . . . and courts in which suits against governmental entities may be pursued.

The traditional construction of Tennessee's constitutional provision regarding sovereign immunity is that suits cannot be brought against the State unless explicitly authorized by statute. . . . Courts will not find a waiver of sovereign immunity unless there is a statute clearly and unmistakably disclosing an intent upon the part of the Legislature to permit such litigation.

*Harakas Constr., Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 561 S.W.3d 910, 924–25 (Tenn. Ct. App. 2018) (quoting *Bratcher v. Hubler*, 508 S.W.3d 206, 208-10 (Tenn. Ct. App. 2015)) (some alterations in original; most internal quotation marks and citations omitted).

Because the plaintiff in *Harakas Construction* failed to articulate any statute expressly waiving Metro's sovereign immunity, the court dismissed the plaintiff's claims of unjust enrichment and promissory estoppel against Metro, based on sovereign immunity. *Id.* at 926. The Tennessee Court of Appeals reached a similar conclusion in *Whitworth v. City of Memphis*, 689 S.W.3d 579, 590 (Tenn. Ct. App. 2023), in which it affirmed the dismissal of equitable claims against the City of Memphis, noting that *Harakas* and other similar decisions "stand[] for the proposition that unless the plaintiff can show a legislative enactment in which the defendant city unmistakably consents to be sued, claims of implied contract, unjust enrichment, and promissory estoppel may be barred by sovereign immunity" (citing *Greenhill v. Carpenter*, 718 S.W.2d 268 (Tenn. Ct. App. 1986))), *perm. appeal denied* (Aug. 9, 2023).

Infinium has not cited any statute expressly waiving Metro's sovereign immunity. In fact, its only response to Metro's argument that it is entitled to sovereign immunity from an unjust

enrichment claim is that Metro failed to raise sovereign immunity as a defense to two other lawsuits against it asserting equitable claims arising from the application of the Sidewalk Ordinance. (Doc. No. 74, at 20.) Infinium argues that "Metro should not be permitted to assert sovereign immunity now, after having had two prior opportunities to litigate its viability as a defense." (*Id.* (citing *Lapides v. Bd. of Regents*, 535 U.S. 613, 620–21 (2002)).)

A state is always "free to waive its Eleventh Amendment immunity from suit in a federal court." *Lapides*, 535 U.S. at 618 (citation omitted). *Lapides* stands for the proposition that a state may waive its immunity through conduct within a specific case—in that case, by voluntarily agreeing to remove the case in which it was named as a defendant to federal court. *See id.* at 620; *see also Barachkov v. Davis*, 580 F. App'x 288, 299 (6th Cir. 2014) ("A state may waive its immunity through its litigation conduct; but the touchstone of waiver doctrine is intent—the state's litigation conduct must clearly indicate the state's intent to waive its immunity. A clear intent to waive immunity may be inferred when a state's litigation conduct is inconsistent and unfair." (citing *Lapides*, 535 U.S. at 620).

A state entity's conduct in one lawsuit, however, does not carry over to a completely different lawsuit. And Metro's apparent decision to waive sovereign immunity in *Knight* has no bearing on its ability to do so here. *Accord Lamar OCI S. Corp. v. Tenn. Dep't of Transp.*, 604 F. Supp. 3d 711, 719 (E.D. Tenn. 2022) (holding that the state's conduct in a prior litigation involving a similar issue but different parties did not "affect [its] ability to raise Eleventh Amendment immunity here. If that were the case, any adversary of a state could claim it had waived sovereign immunity simply because it had previously appeared to litigate a matter in federal court. Such a ruling would render Eleventh Amendment protection essentially impotent.").

Because Infinium cannot point to a statute waiving immunity or to conduct in *this* litigation by which Metro waived immunity, Metro is entitled to sovereign immunity under state law from the state law unjust enrichment claim. This claim will be dismissed without prejudice. *Accord Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005) (holding that there is a "heavy presumption" that dismissal of claim against a state government on sovereign immunity grounds is "without prejudice").

### B.      Statute of Limitations and Equitable Estoppel

Because the statute of limitations is an affirmative defense on which the defendant bears the burden of proof, a motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Jodway v. Orlans, PC*, 759 F. App'x 374, 379 (6th Cir. 2018) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). A motion to dismiss based on a statute of limitations may be granted, however, "if the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)). If it is clear from the face of the complaint that the statute of limitations has run, the burden shifts to the plaintiff to "affirmatively plead an exception to the limitations statute." *Reid v. Baker*, 499 F. App'x 520, 526 (6th Cir. 2012). Infinium has attempted to do so here, implicitly acknowledging that at least some of the named plaintiffs' claims would otherwise be time-barred.

It is well established that the one-year statute of limitations set forth in Tenn. Code Ann. § 28-3-104(a) applies to claims in Tennessee under 42 U.S.C. § 1983. *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000). Based on this limitation period, Metro asserts that any claim accruing more than one year before this lawsuit was filed (*i.e.*, before August 30, 2022) is time-barred and that Infinium cannot show that the limitations period should be extended by the "continuing violations" doctrine or tolled by equitable estoppel. (Doc. No. 65, at 6–9.) Infinium

tacitly acknowledges that a one-year limitations period applies to its § 1983 claims (*see* Doc. No. 74, at 15 n.8), but it maintains that both doctrines allow it to avoid application of the statute, at least as to some of its claims.

### 1. *Continuing Violations Doctrine*

While the limitations period for a § 1983 claim is set by state law, "[t]he date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson v. State of Tenn. Dep't of Children's Servs*., 510 F.3d 631, 635 (6th Cir. 2007) (citation omitted). "Ordinarily, the 'discovery rule' applies to establish the date on which the statute of limitations begins to run, *i.e.*, the date when the plaintiff knew or through the exercise of reasonable diligence should have known of the injury that forms the basis of his action." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). This test is an objective one, and the Sixth Circuit has directed courts to ask "what event should have alerted the typical lay person to protect his or her rights." *Eidson*, 510 F.3d at 635 (quoting *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)); *see also* Sharpe, 319 F.3d at 266.

The Sixth Circuit has also recognized that application of the "continuing violations" doctrine may toll the running of the limitations period. When it applies, "a plaintiff is entitled to have the court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Sharpe*, 319 F.3d at 267 (quoting *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394 (6th Cir. 1999)). In this circuit, the doctrine has most commonly been applied in Title VII cases and is "rarely extend[ed] to § 1983 actions." *Id.* at 267.

Prior to the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Sixth Circuit had recognized that a "continuing violation" may exist if the plaintiff alleges "serial violations" or "a longstanding and demonstrable policy of

discrimination." *Sharpe*, 319 F.3d at 266. After *Morgan*, however, plaintiffs can no longer rely on the continuing violations doctrine "to allow recovery for acts that occurred outside the filing period," when those acts were "discrete acts of discrimination or retaliation." *Sharpe*, 319 F.3d at 267 (citing *Morgan*, 536 U.S. at 112); *see also Bouye v. Bruce*, 61 F.4th 485, 492 (6th Cir. 2023). "On the other hand, the *Morgan* Court said that a Title VII plaintiff could still invoke the doctrine when his claim was based on standard operating procedure 'that cannot be said to occur on any particular day' but instead 'occur[s] over a series of days or years.'" *Bouye*, 61 F.4th at 492 (quoting *Sharpe*, 319 F.3d at 267). "Such claims are based on the cumulative effect of individual acts," *Morgan*, 536 U.S. at 115, and it is "harder to pin down a date for the statute of limitations for these claims," *Bouye*, 61 F.4th at 492.

The Sixth Circuit remains "extremely reluctant" to apply the continuing violations doctrine outside the Title VII context, but it has applied it to claims for deprivations of civil rights. *Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410, 416 (6th Cir. 2007). In this context, the Sixth Circuit has summarized the test for whether a continuing violation exists as follows:

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern. . . . Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiff[] must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Eidson*, 510 F.3d at 635 (quoting *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999)). "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* (quoting *Tolbert*, 172 F.3d at 940). Importantly, "[p]assive inaction does not support a continuing violation theory." *Id.*

In *Eidson*, for example, the Tennessee Department of Children's Services removed the plaintiff's children from his custody on November 18, 2003 due to false allegations of sexual abuse. *Eidson*, 510 F.3d at 633. Nearly a year later, after the allegations were recanted, the

Department returned custody of the children to the plaintiff. *Id.* at 634. The plaintiff did not file suit until a year after custody of the children was returned to him. He argued that the continuing violations doctrine saved his claims from being barred by the one-year statute of limitations period because of the Department's "continuing wrongful conduct" in withholding his children "from the date of the initial removal through" their eventual return. *Id.* at 635. The Sixth Circuit rejected this argument, focusing on the Department's initial decision to revoke custody as the event that triggered a violation of the plaintiff's rights under the Due Process clause of the Fourteenth Amendment. The court emphasized that the deprivation of a protected "life, liberty or property interest" by the state is not what violates the plaintiff's rights; rather, the "deprivation of such an interest *without due process of law*" effected the violation. *Id.* (citation omitted; emphasis in original). By the time the plaintiff finally received a delayed hearing, however, his procedural due process claim ceased to accrue, and the court found that the fact that he was not restored full custody until months later was not a continuing violation. Instead, "[a]ny harmful effects resulting from actions allegedly taken by defendants after the juvenile court proceeding [were] appropriately characterized as 'continuing ill effects,' which do not make out a continuing violation." *Id.* at 637. In other words, for a claim to be timely, "it is not sufficient for Plaintiffs' injuries to be continuing: Defendants' violations must also be continuing." *Doe v. Haslam*, No. 3:16-cv-02862, 2017 WL 5187117, at *11 (M.D. Tenn. Nov. 9, 2017) (Crenshaw, C.J.).

In this case, Infinium alleges that the Sidewalk Ordinance requires Metro to refund all fees paid into the Fund that are not allocated within ten years of their receipt. (Am. Compl. ¶ 22 (citing Metro Code § 17.20.120(D)(2)).) The Amended Complaint further alleges that Metro received payments in the Fund, has allocated some of those payments, but has not allocated all of them. (Am. Compl. ¶¶ 23–25.) Metro, in fact, admits that it has not allocated all of the payments. (Answer

¶ 25.) Infinium asserts that these factual allegations sufficiently allege a continuing violation. (Doc. No. 74, at 16.)

The right at issue here, however, is a taking in violation of the Fifth Amendment. The relevant clause provides, "nor shall private property be taken for public use, without just compensation." U.S. Const. Amend. V. The taking itself does not violate a property owner's rights; rather, it is the taking without compensation. And the claim accrues upon the taking without compensation. *See Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019) ("[T]he property owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under § 1983 at that time."); *see also Brown v. Legal Found. of Washington*, 538 U.S. 216, 231–32 (2003) ("While it confirms the State's authority to confiscate private property, the text of the Fifth Amendment imposes two conditions on the exercise of such authority: the taking must be for a 'public use' and 'just compensation' must be paid to the owner."). Infinium alleges that property owners suffered a taking without compensation when, in order to obtain a building permit, property owners were required to pay into the Fund, pay to build a sidewalk, or pay to request a waiver. The claim accrued when the taking without just compensation occurred. The fact that Metro held onto the money paid into the Fund without returning it (or allocating it) does not give rise to a continuing violation, as this was merely "passive inaction" on the part of Metro, not repeated unlawful acts. Although the property owners continued to feel the ill effects of the initial taking, just as the plaintiff in *Eidson* continued to be deprived of the custody of his children, "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Eidson*, 510 F.3d at 635.

The Amended Complaint does not allege facts that would give rise to a continuing violation for purposes of tolling the statute of limitations. Accordingly, with respect to each plaintiff and putative class member, the Fifth Amendment unlawful taking occurred, and the claim accrued, upon the enforcement of the Sidewalk Ordinance to effect a taking of private property without just compensation. The statute of limitations runs from the date each taking occurred, and what Metro did or did not do with the money after it was paid into the Fund is irrelevant to this analysis. Metro is entitled to summary judgment on the question of whether the Amended Complaint alleges a continuing violation.

### 2. *Equitable Estoppel*

Even when, as here, a federal claim is at issue, if the statute of limitations is supplied by state law, federal courts also look to state law for tolling rules. *See Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 845 (6th Cir. 2015) ("Having borrowed the state's statute of limitations for the § 1983 claim, we apply the state's tolling statute, as long as the result is not inconsistent with federal law or policy.").

The Amended Complaint expressly seeks "[a] finding that Defendant is equitably estopped from asserting that the statute of limitations has continued running as to the claims of Plaintiffs and the members of the Rule 23 classes as of the date of the *Knight* decision by the Sixth Circuit, *i.e.*, May 10, 2023." (Am. Compl. Pt. VII ¶ E, at 25.) This assertion is based on Metro's initially indicating on the Sidewalk Claim Process website that costs incurred on or after May 10, 2022 would be considered and its subsequent "unilateral" decision, in November 2023, to remove that language and apply a one-year limitations period. (Am. Compl. ¶¶ 54–62.) The Amended Complaint further alleges that named plaintiff Ascent Construction and some putative class members relied on Metro's purported "agreement" to pay claims for costs incurred on or after May 10, 2022, that they "intended to assert claims as part of the Metro Claim Process, but did not prior

to Metro's unilateral change to the criteria," and that they now will "have any claim for costs incurred between May 10, 2022, and August 30, 2022, denied by Metro as untimely." (*Id.* ¶ 64.)[3]

Effectively glossing over the distinction between administrative claims and lawsuits, Ascent's position appears to be that Metro should be equitably estopped from asserting, with respect to Ascent or any class member, that claims for costs accruing after May 10, 2022 but before August 30, 2022 are time-barred.[4] Metro argues that the equitable estoppel argument is foreclosed by its sovereign immunity. Infinium responds that sovereign immunity is intended to protect government entities from lawsuits but not to bar the assertion of affirmative defenses or equitable doctrines. (Doc. No. 74, at 17.)

Under Tennessee law, the doctrine of equitable estoppel may toll the running of the statute of limitations "when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period." *Redwing v. Cath. Bishop*, 363 S.W.3d 436, 460 (Tenn. 2012) (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 145 (Tenn. 2001), and *Ingram v. Earthman*, 993 S.W.2d 611, 633 (Tenn. Ct. App. 1998)). To establish that equitable estoppel applies, a plaintiff must plead

---

[3] In its Response to the Motion for Partial Judgment on the Pleadings, Infinium asserts that "[i]n actual practice, Metro publicly broadcast its claims process on its website, where it set forth payment criteria and promised that it would pay certain claims that accrued on or after May 10, 2022." (Doc. No. 54, at 19.) It also asserts that Metro did not change the website language until plaintiffs' counsel stated during the hearing on Metro's Motion to Disqualify Counsel that this "public messaging justified equitable estoppel back to May 10, 2022." (*Id.*)

[4] Ascent alleges that, in reliance on the website language, it did not get around to filing a *claim* prior to Metro's modification of the Sidewalk Claim Process website (Am Compl. ¶¶ 58, 64), but this does not really make any sense with respect to Ascent, because Ascent does not allege that it ever filed an administrative claim. Instead, it filed this lawsuit before Metro changed the website language. The court therefore construes the allegations regarding equitable estoppel to be that, in reliance on the language of the website, Ascent did not file a lawsuit immediately after issuance of *Knight* but instead delayed until August 30, 2023 to file suit, believing that Metro had voluntarily agreed to extend the limitations period to cover claims dating back to May 10, 2022. It may be that putative class members relied on the language to delay filing administrative claims and then failed to file them at all, believing they would be denied as untimely.

that: (1) the defendant induced the plaintiff to delay filing suit with "specific promises, inducements, suggestions, representations, assurances or other similar conduct" that the defendant knew or should have known would induce the plaintiff to delay; and (2) the plaintiff's delay in filing suit "was not attributable to [his or her] own lack of diligence." *Id.* (citing *Fahrner*, 48 S.W.3d at 145, and *Hardcastle v. Harris*, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004)).

"In the context of defenses predicated on a statute of limitations, the doctrine of equitable estoppel always involves allegations that the defendant misled the plaintiff." *Id.* at 462 (citing *Fahrner*, 48 S.W.3d at 146. Examples provided by the Tennessee Supreme Court of circumstances warranting application of the doctrine include: "(1) when a defendant promises not to assert a statute of limitations defense, (2) when a defendant promises to pay or otherwise satisfy the plaintiff's claim without requiring the plaintiff to file suit, and (3) when a defendant promises to settle a claim without litigation following the conclusion of another proceeding between the defendant and a third party." *Id.* at 460–61 (citations omitted). The focus of an equitable estoppel inquiry "is on the defendant's conduct and the reasonableness of the plaintiff's reliance on that conduct." *Id.* (citations omitted). Equitable estoppel requires "conduct specifically designed to prevent the plaintiff from suing in time." *Fahrner*, 48 S.W.3d at 145. "In the context of defenses predicated on a statute of limitations, the doctrine of equitable estoppel always involves allegations that the defendant misled the plaintiff." *Redwing*, 363 S.W.3d at 461 "Evidence of vague statements or ambiguous behavior by a defendant will not carry the day for a plaintiff asserting equitable estoppel." *Hardcastle*, 170 S.W.3d at 85.

In addition, Tennessee courts recognize that, "[a]lthough the doctrine may be invoked against a county, 'very exceptional circumstances are required to invoke the doctrine against the State and its governmental subdivisions.'" *Faust v. Metro. Gov't of Nashville*, 206 S.W.3d 475,

497 (Tenn. Ct. App. 2006) (citing *Greene Cty. v. Tenn. E. Elec. Co.*, 40 F.2d 184, 186 (6th Cir. 1930), and quoting *Paduch v. City of Johnson City*, 896 S.W.2d 767, 772 (Tenn. 1995)). More specifically, to invoke the doctrine against a municipality, "the public body [must have taken] affirmative action that clearly induced a private party to act to his or her detriment." *Paduch*, 896 S.W.2d at 772–73.

*Faust* and *Paduch* do not hold that equitable estoppel may *never* be invoked against a municipality based on sovereign immunity. Moreover, the cases Metro cites in support of that premise, principally *Harakas Construction* and *Whitworth*, did not involve the availability of equitable estoppel to toll the statute of limitations for claims against a municipality. *Whitworth* held that a promissory estoppel claim against a municipality, like unjust enrichment and implied contract, was barred by sovereign immunity. *Whitworth*, 689 S.W.3d at 590. But, unlike promissory estoppel, equitable estoppel is not a stand-alone claim. *See Smith v. Hi-Speed, Inc.*, 536 S.W.3d 459, 483 (Tenn. C. App. 2016). In *Harakas*, the court stated that "estoppel does not generally apply to the acts or statements of public agents." *Harakas Constr.*, 561 S.W.3d at 928 (quoting *Westchester Co. v. Metro. Gov't*, No. M2004-02391-COA-R3-CV, 2005 WL 3487804, at *4 (Tenn. Ct. App. Dec. 20, 2005)). There, too, the plaintiffs were effectively trying to establish an affirmative promissory estoppel or implied contract claim based on statements by specific agents of the municipality. These cases cannot be construed as holding that a plaintiff bringing a claim against a municipality can never seek to apply equitable estoppel to toll the statute of limitations. Moreover, aside from the distinction between promissory estoppel and equitable estoppel, Infinium alleges that it and others relied on a publicly posted Metro website rather than an assertion by an individual agent, as in *Harakas* and *Whitworth*. In short, Metro's argument that application of the doctrine of equitable estoppel is barred *per se* by sovereign immunity is not

persuasive.

It may well be that equitable estoppel does not apply in this case, at least not to any of the named plaintiffs, based on the factual allegations in the Amended Complaint and the actual language of the Metro Sidewalk Claim Process website. Metro could have, but did not, argue that the fact that it temporarily extended the limitations period for filing *administrative claims* does not amount to an unambiguous promise not to raise the statute of limitations defense in a *lawsuit* or that the website's language does not qualify as "conduct specifically designed to prevent the plaintiff from suing in time." *Fahrner*, 48 S.W.3d at 145. It does not argue that the extension of the limitations period for administrative claims does not qualify as an "affirmative action that clearly induced a private party to act to his or her detriment." *Paduch*, 896 S.W.2d at 772–73. Metro, instead, raises no argument other than sovereign immunity, and the court declines to reach the merits of arguments that Metro did not raise. At this juncture, the court simply finds that Metro has not established that Infinium is barred as a matter of law from asserting that the statute of limitations is tolled by the doctrine of equitable estoppel.

### C. Class Claims

Metro argues that Infinium's class claims are subject to dismissal because the Amended Complaint fails to allege facts establishing the "commonality" and "typicality" claims necessary for a case to proceed as a class action. Its argument is based on assertions that, in essence, the Sixth Circuit's opinion in *Knight* did not necessarily establish the unconstitutionality of the Sidewalk Ordinance as applied to every property owner who was required to comply with the Ordinance to obtain a building permit and that, instead, *Knight* established that the determination of whether the Ordinance is constitutional will require an "individualized analysis" as to each property owner against whom it was enforced. (*See* Doc. No. 64, at 14 ("Ultimately, the Court in *Knight* did not resolve the question of whether the Sidewalk Ordinance could ever be legally applied as the

holding turned on other legal arguments, but the upshot of this discussion is that resolving the question of the constitutionality of the Sidewalk Ordinance's under the Takings Clause is a complex question which requires an individualized analysis.").) It also argues that "a taking does not occur under the Fifth Amendment unless it is compelled" and that the named plaintiffs have not alleged facts showing that they were "truly compelled to pay the costs and fees associated with the Sidewalk Ordinance" and, therefore, have "failed to allege facts which would make their own Takings Clause claim plausible on its face." (*Id.* at 15–16.)

In support of this latter argument, Metro is taking the position that Infinium cannot show that a taking occurred, because it has not alleged that it objected to compliance with the Ordinance, sought a variance, or appealed its application and, therefore, that its compliance was "voluntary" rather than "compelled." The cases Metro cites in support of this latter argument, *Yee v. City of Escondido*, 503 U.S. 519 (1992), and *McCarthy v. City of Cleveland*, 626 F.3d 280 (6th Cir. 2010), involve facts not remotely similar to those at issue here and, moreover, predate the Supreme Court's 2019 recognition that "the settled rule" that "exhaustion of state remedies 'is *not* a prerequisite to an action under [42 U.S.C.] § 1983'" also applies in taking cases. *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019) (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)).

While *Knick* overruled *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), to hold that exhaustion is not required, it indeed "left untouched *Williamson County*'s alternative holding that plaintiffs may challenge only 'final' government decisions." *Pakdel v. City & Cty. of San Francisco*, 594 U.S. 474, 4777 (2021) (quoting *Knick*, 588 U. S. at 188). But the Court further explained that the "finality requirement is relatively modest. All a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question." *Pakdel*, 594 U.S. at 478 (internal brackets,

ellipses, and quotation marks omitted). Infinium alleges in this case that the process of obtaining a waiver to excuse compliance with the Sidewalk Ordinance is time-consuming, costly, and usually fruitless and, likewise, that requests for a variance and appeals are rarely successful and do not provide complete relief, such that "any effort to avoid application of the Sidewalk Ordinance was futile." (Am. Compl. ¶ 38.) The court finds that the Amended Complaint adequately alleges that Metro's enforcement of the Sidewalk Ordinance as to property owners seeking building permits constitutes a "final" government action that satisfies *Williamson County*.

The court is likewise not persuaded by Metro's other argument—that *Knight* left open the possibility of individual adjudication of each property owner's claims to determine whether an unconstitutional taking has occurred and, therefore, that the class claims must be dismissed. In *Knight*, the Sixth Circuit recognized that this court, in the decision under review in that case, had concluded that the Sidewalk Ordinance "likely" could not meet the "rough proportionality" element of the unconstitutional conditions test developed by the Supreme Court in *Nollan v. California. Coastal Commission*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994). *Knight*, 67 F.4th at 836. In the *Knight* appeal, Metro had waived the argument, not even attempting to address the plaintiffs' briefing on the issue and conceding at oral argument that the *Nollan* test was "an extremely difficult standard to meet, and the sidewalk ordinance likely doesn't meet that standard." *Id.* (record citation omitted). As a result, the Sixth Circuit was not called upon to apply the test to the Ordinance and expressly "save[d] this issue for a case in which Nashville seeks to satisfy *Nollan*'s test as against other permit applicants." *Id.*

This may be that case, as Metro now suggests, but the likelihood that Metro can meet the standard remains low, and it has not actually explained why the analysis of the rough proportionality prong of the test would vary significantly from one property owner to the next.

And it does not provide a basis, at this juncture anyway, for the dismissal of the class claims.

Metro, in short, has not adequately shown that dismissal of the class claims altogether is warranted under *Knight* or *Nollan*.

## IV.     CONCLUSION

For the reasons set forth herein, Metro's Motion for Partial Judgment on the Pleadings will be granted in part and denied in part. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge